The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HUAWEI DEVICE CO., LTD., and<br>HUAWEI DEVICE USA, INC.,<br><br>Defendants. | No. 19-CR-010<br><br>**DEFENDANTS' MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY**<br><br>**NOTE ON MOTION CALENDAR: August 9, 2019**<br><br>***ORAL ARGUMENT REQUESTED*** |

Defendants Huawei Device Co, Ltd. ("Huawei China") and Huawei Device USA, Inc. ("Huawei USA") (collectively "Huawei Device"), through counsel, respectfully move this Court to dismiss the Indictment on the grounds of unconstitutional selective prosecution. Alternatively, Huawei Device respectfully moves the Court for an Order directing the government to provide documents responsive to Requests 11 through 30 contained in Huawei Device's initial discovery letter to the government. *See* Letter from Huawei Device's counsel to the government, dated March 15, 2019 (Exhibit A).

Huawei Device is the target of the politically motivated decision, at the highest levels of the U.S. government, to pursue the selective prosecution of Chinese companies and nationals for

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

alleged misappropriation of intellectual property.  Using national security concerns as a pretext, the government has targeted Huawei Device based on an unconstitutional and discriminatory category—its Chinese nationality—in an effort to hinder its efforts to compete economically in the global market.  The disproportionate number of trade-secret prosecutions targeted at Chinese nationals and companies, combined with the public and internal actions and comments of U.S. government officials, demonstrates that this prosecution is unconstitutional.  The Indictment must be dismissed.  At the very least, especially in light of the overwhelming evidence of discrimination cited herein, Huawei Device is entitled to discovery to determine the motive and basis upon which the government decided to indict Huawei Device amidst an unprecedented prosecutorial offensive against Chinese nationals and businesses.

## BACKGROUND

The allegations in this case are not new to any of the parties involved, as they center on events that occurred five to six years ago and were already the subject of civil litigation in this district.  On September 2, 2014, T-Mobile USA, Inc. sued Huawei USA, among others, for misappropriation of trade secrets based on the same set of facts at issue in this matter.[1]  The case was tried in this district in April and May 2017, resulting in a jury verdict on May 18, 2017.  Although the jury found that Huawei USA had misappropriated trade secrets, under the lower preponderance of the evidence standard of proof applicable in a civil case, it awarded T-Mobile zero damages on that count of its complaint and did not find any willful or malicious conduct.[2]  The parties then settled the case and jointly moved to dismiss with prejudice in December 2017.

Over four years after the civil lawsuit was filed, and more than one and one-half years after the civil verdict, the government unsealed the Indictment, as well as another indictment that named a number of defendants, including some Huawei entities and the Chief Financial Officer

---

[1] Compl., *T-Mobile USA, Inc. v. Huawei Device USA, Inc. et al.*, No. 2:14-cv-01351 (W.D. Wa. Sept. 2, 2014), ECF No. 1.

[2] Court's Verdict Form, *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, No. 2:14-cv-01351 (W.D. Wa. May 18, 2017), ECF No. 484 (awarding $4.8 million for breach of contract claim but no damages for misappropriation of trade secrets claim).

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 2

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

of Huawei Technologies Co., Ltd.  The government announced the charges in a January 28, 2019, coordinated press conference that included the Acting Attorney General, the United States Attorney for the Western District of Washington, the United States Attorney for the Eastern District of New York, the Secretary of the Department of Homeland Security, the Secretary of the Department of Commerce, and the Director of the Federal Bureau of Investigation ("FBI").[3] The Indictment was returned in the midst of a wave of actions by the White House and several executive branch agencies (the "Executive") against Huawei Device and other Chinese companies in the technology sector in 2018 and 2019, including but not limited to the following:

- In a strategy report issued at the end of 2017, the government concluded that China's economic expansion is partly due to "its access to the U.S. innovation economy,"[4] and determined that enforcement actions "can be important parts of broader strategies to deter, coerce, and constrain adversaries."[5]

- Executive officials reportedly spoke to senior AT&T management in January 2018, shortly before a potential deal between AT&T and Huawei was to be announced. AT&T walked away from the deal.[6]

- In its Findings of the Section 301 Investigation against China released on March 22, 2018, the United States Trade Representative ("USTR") identified China's technology transfer, licensing, outbound investment, cyber intrusion, and other acts, policies and practices as detrimental to U.S. interests.[7]  That same day, President

---

[3] Acting Attorney General Whitaker News Conference, C-Span (Jan. 28, 2019), https://www.c-span.org/video/?457336-1/acting-attorney-general-whitaker-announces-indictments-chinese-company-huawei.

[4] National Security Strategy at 25, Dec. 18, 2017, https://www.whitehouse.gov/wp-content/uploads/2017/12/NSS-Final-12-18-2017-0905.pdf.

[5] *Id.* at 34.

[6] Stu Woo, Dan Strumpf, and Betsy Morris, *Huawei, Seen as Possible Spy Threat, Boomed Despite U.S. Warnings*, *Wall St. J.* (Jan. 8, 2018), https://www.wsj.com/articles/huawei-long-seen-as-spy-threat-rolled-over-u-s-road-bumps-1515453829.

[7] Office of the USTR, Findings Of The Investigation Into China's Acts, Policies, And

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 3

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

Trump announced that the Administration would take adverse economic action against China, including the imposition of tariffs.[8]

- In November 2018, the Department of Justice announced the China Initiative to "identify priority Chinese trade theft cases" and more aggressively prosecute allegations of trade secret theft specifically involving China.[9]

- On December 1, 2018, President Trump met with President Xi in Buenos Aries, Argentina at dinner meeting to negotiate a trade dispute.  That same day, Huawei's Chief Financial Officer Ms. Meng Wanzhou was arrested in Canada at the behest of the U.S. government.[10]

- On January 28, 2019, six days after the White House reportedly cancelled a trade planning meeting with two Chinese vice ministers due to outstanding disagreements over IP policies, the Indictment of this case was unsealed, along with the indictment relating to Ms. Meng's arrest.  Both indictments allege facts relating to years-old conduct (some over more than a decade). [11]

---

Practices Related To Technology Transfer, Intellectual Property, And Innovation Under Section 301 Of The Trade Act Of 1974 (Mar. 22, 2018) https://uschinatradewar.com/files/2018/08/USTR-FULL-301-REPORT-CHINA-TECHNOLOGY-TRANSFER.pdf.

[8] Office of the USTR, President Trump Announces Strong Actions to Address China's Unfair Trade (Mar. 22, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/march/president-trump-announces-strong.

[9] Press Release, U.S. Dep't of Justice, "Attorney General Jeff Sessions Announces New Initiative to Combat Chinese Economic Espionage" (Nov. 1, 2018), https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-announces-new-initiative-combat-chinese-economic-espionage.

[10] Mark Landler, Edward Wong and Katie Benner, "Huawei Executive's Arrest Intensifies Trade War Fears," *NY Times*, (Dec. 6, 2018), https://www.nytimes.com/2018/12/06/us/politics/huawei-meng-china-iran.html.

[11] CNBC, "US cancels trade planning meeting with China, source says," (Jan. 22, 2019), https://www.cnbc.com/2019/01/22/us-cancels-trade-planning-meeting-with-china-source-says.html.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 4

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

- On May 15, 2019, Huawei and its affiliates were placed on the Entity List by the Bureau of Industry and Security of the Department of Commerce ("BIS"), which prevents the sale or transfer of American technology to Huawei entities absent a license issued by BIS.[12]

- Over the past two years, the government has also engaged in a concerted (yet largely unsuccessful) effort to dissuade allies from using Huawei equipment in their telecommunications systems.[13]

The timing of the Indictment, considered within the context of the multi-pronged policy offensive against Chinese corporations and nationals detailed above, indicates that something aside from legal principles is driving this prosecution.

## LEGAL STANDARD

A prosecutor's discretion is "subject to constitutional constraints," one of which is that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal citations omitted); *see Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) (invalidating ordinance selectively prosecuted against defendants of Chinese nationality). To show selective

---

[12] Press Release, U.S. Dep't of Commerce, "Department of Commerce Announces the Addition of Huawei Technologies Co. Ltd. to the Entity List" (May 15, 2019), https://www.commerce.gov/news/press-releases/2019/05/department-commerce-announces-addition-huawei-technologies-co-ltd.

[13] Stu Woo and Kate O'Keeffe, "Washington Asks Allies to Drop Huawei," *Wall St. J.* (Nov. 23, 2018), https://www.wsj.com/articles/washington-asks-allies-to-drop-huawei-1542965105; *see also* Julian E. Barnes and Adam Satariano, U.S. Campaign to Ban Huawei Overseas Stumbles as Allies Resist, *N.Y. Times* (June 29, 2019), https://www.nytimes.com/2019/03/17/us/politics/huawei-ban.html; Kelly Olsen, "US has a 'concerted strategy' to push allies to reject Huawei's 5G equipment: Eurasia Group," CNBC (Dec. 11, 2018), https://www.cnbc.com/2018/12/11/us-has-a-concerted-strategy-to-push-allies-to-reject-huawei-eurasia.html; Todd Shields and Bill Allison, "Trump is Losing the Fight to Ban Huawei from Global Networks," *Bloomberg Businessweek* (May 9, 2019), https://www.bloomberg.com/news/articles/2019-05-09/trump-is-losing-the-fight-to-ban-huawei-from-global-networks; David E. Sanger, Julian E. Barnes, Raymond Zhong, and Marc Santora, In 5G Race with China, "US. Pushes Allies to Fight Huawei," *N.Y. Times* (Jan. 26, 2019), https://www.nytimes.com/2019/01/26/us/politics/huawei-china-us-5g-technology.html.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 5

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

prosecution based on an arbitrary classification, the defendant must show that the prosecution works "a discriminatory effect and . . . was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 599 (1985).  To satisfy the "discriminatory effect" prong, the claimant "must show that similarly situated individuals of a different [nationality] were not prosecuted." *Armstrong*, 517 U.S. at 465.  Should the defendant prevail in its selective prosecution claim, the indictment must be dismissed.  "A defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute." *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972).

Defendants need not make this showing on their own, however.  Rather, they are entitled to discovery upon "a credible showing of different treatment of similarly situated persons." *Armstrong*, 517 U.S. at 470.  To make such a credible showing, a defendant must produce "some evidence tending to show the existence of the essential elements of a selective-prosecution claim." *Id.* (quotation marks omitted).  Put another way, "a defendant must present specific facts . . . which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors." *United States v. Bourgeois*, 964 F.2d 935, 939 (9th Cir. 1992).  The "credible showing" standard "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Armstrong*, 517 U.S. at 470.  It is a "rigorous" requirement, but not an "insuperable task." *Id.*  To meet this standard, "direct evidence that similarly situated . . . persons [a]re not being prosecuted in like numbers . . . is not required." *United States v. Reese*, 60 F.3d 660, 663 (9th Cir. 1995).  Rather, "statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive." *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

This lower threshold reflects the fact that, "to sufficiently show discriminatory intent, the defendant needs discovered documents" uniquely within the government's possession. *Bourgeois*, 964 F.2d at 939.  A defendant's showing may be "sufficient" to warrant discovery

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 6

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

even if "evidence of discriminatory intent is circumstantial." *United States v. McGraw-Hill Companies, Inc.*, No. 13-779, 2014 WL 1647385, at \*12 (C.D. Cal. Apr. 15, 2014).

## ARGUMENT

### I.   The Government is Engaged in a Selective Prosecution of Huawei Device

The government is arbitrarily prosecuting Huawei Device because it is a large, successful Chinese telecommunications firm.  This targeting is revealed both in the disproportionate effect prosecutorial decisions have had on Chinese companies and nationals, and in official government actions, documents, and public statements, which demonstrate an unconstitutional motive to punish a Chinese company for thriving in international market competition.  Indeed, the government's strained efforts to impede Huawei and other Chinese companies from competing with U.S. companies underlies this and other prosecutions of Chinese companies and individuals.

### A.   The Government's Prosecution Imposes a Discriminatory Effect on Chinese Corporations.

A defendant may show discriminatory effect by "investigat[ing] whether similarly situated persons of other [nationalities] . . . were known to federal law enforcement officers, but were not prosecuted in federal court." *Armstrong*, 517 U.S. at 470.  "A court should take care [ ] not to define the [similarly situated] requirement too narrowly." *United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1061 (N.D. Cal. 2016) (quotation marks omitted).  Here, a showing of discriminatory effect is plain because the government's aggressive criminal prosecution of Huawei and other Chinese defendants is unprecedented, and the government has chosen not to prosecute prior cases in which willful or malicious conduct was not found or in which the jury awarded zero damages.

"[T]riggered more by American anxieties than by Chinese actions,"[14] on November 1, 2018, the Department of Justice ("DOJ") announced its "China Initiative," an unprecedented

---

[14] Stephen Wertheim, "Is It Too Late to Stop a New Cold War With China?" *N.Y. Times* (June 8, 2019), https://www.nytimes.com/2019/06/08/opinion/sunday/trump-china-cold-war.html.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 7

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

push to "identify priority Chinese trade theft cases" for criminal prosecution.[15]  This initiative

ramped up an already intense focus on disproportionately prosecuting Chinese nationals and

corporations for alleged theft of trade secrets and economic espionage.  As then-Deputy Attorney

General Rod J. Rosenstein admitted in December 2018, "More than 90 percent of the [DOJ's]

cases alleging economic espionage over the past seven years involve China.  More than two-

thirds of the Department's cases involving thefts of trade secrets are connected to China."[16]  The

very next day, Assistant Attorney General for National Security John C. Demers, who was

named as the leader of the China Initiative, announced the prosecution of a Chinese national for

theft of trade secrets, stating that "all too often these thefts involve the Chinese government or

Chinese companies."[17]  Assistant Attorney General Brian A. Benczkowski of the Criminal

Division commented that "[t]he Criminal Division fully supports the Attorney General's

initiative to counter Chinese economic aggression."[18]  Since the announcement of the China

Initiative in November 2018, DOJ has criminally prosecuted more than thirteen Chinese

nationals or entities under 18 U.S.C. §§ 1831 and 1832.[19]

The Initiative accelerated an existing trend:  within the last five years, more than 60% of

---

[15] Press Release, U.S. Dep't of Justice, "Attorney General Jeff Sessions Announces New Initiative to Combat Chinese Economic Espionage" (Nov. 1, 2018), https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-announces-new-initiative-combat-chinese-economic-espionage.

[16] Press Release, U.S. Dep't of Justice, "Deputy Attorney General Rod J. Rosenstein Announces Charges Against Chinese Hackers" (Dec. 20, 2018), https://www.justice.gov/opa/speech/deputy-attorney-general-rod-j-rosenstein-announces-charges-against-chinese-hackers.

[17] Press Release, U.S. Dep't of Justice, "Chinese National Charged with Committing Theft of Trade Secrets" (Dec. 21, 2018), https://www.justice.gov/opa/pr/chinese-national-charged-committing-theft-trade-secrets.

[18] Press Release, U.S. Dep't of Justice, "Assistant Attorney General Brian A. Benczkowski of the Criminal Division Delivers Remarks Regarding Chinese Economic Espionage," Nov. 1, 2018, https://www.justice.gov/opa/speech/assistant-attorney-general-brian-benczkowski-criminal-division-delivers-remarks-regarding.

[19] A collection of recent prosecutions under 18 U.S.C. §§ 1831 and 1832 can be found at https://jeremy-wu.info/fed-cases/.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 8

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

Economic Espionage Act cases charged by DOJ have involved Chinese entities or individuals.[20] In a 2018 report to Congress, DOJ provided a list of ten criminal cases it had pursued involving alleged commercial and state-sponsored theft of trade secrets in the past year; eight of the cases targeted Chinese nationals or companies.[21]  By comparison, in 2017, 1,134 civil cases alleging misappropriation of trade secrets were filed in U.S. District courts alone, and only a small number involve Chinese defendants.[22]  Commentators have observed that "[t]he statistics on economic espionage cases involving China in the past several years are staggering."[23]  Put simply, the vast majority of civil cases brought by private parties alleging theft of trade secrets have not involved Chinese defendants, yet the vast majority of criminal cases brought by the government have involved Chinese defendants.

These lopsided numbers are strongly probative of an improper prosecutorial bias.  The Ninth Circuit has held that such statistical disparities may form the basis for a "colorable showing" of selective prosecution.  In *Reese*, 60 F.3d at 662, the court held that a study showing that "the vast majority" of defendants in crack-related prosecutions "were black" satisfied the defendant's burden:  "That study alone could provide the necessary support for a colorable basis determination."  *Id.*  The statistical case here is just as stark.  In just over eight months since the announcement of China Initiative, DOJ has charged numerous Chinese individuals and corporations under Sections 1831 and 1832 on behalf of American companies, including T-Mobile USA (defendant Huawei Device), Phillips 66 (defendant Hongjin Tan), Apple (defendant Jizhong Chen), Coca-Cola (defendants You Xiaorong and Liu Xiangchen), Anthem (defendants

---

[20] *Id.*

[21] "U.S. Dep't of Justice PRO IP Act Annual Report FY 2018," at 15-16, https://www.justice.gov/iptf/page/file/1164876/download.

[22] Steve Brachman, "Reports Shows Significant Increase in Trade Secret Litigation Since Passage of DTSA," IP Watchdog (July 27, 2018), https://www.ipwatchdog.com/2018/07/27/reports-increase-trade-secret-litigation-dtsa/id=99646/.

[23] Jessica Nall and Janice Reicher, "3 Trends In Criminal Trade Secret Prosecution," *Law360*, https://www.law360.com/articles/1119814/3-trends-in-criminal-trade-secret-prosecution.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 9

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

1   Wang Fujie and John Doe), and Analog Devices (defendants Haoyang Yu and Tricon MMIC),

2   among others.[24]

3       Indeed, a recent statistical survey found that "Chinese and other Asian-Americans are

4   disproportionately charged under the Economic Espionage Act, receive much longer sentences,

5   and are significantly more likely to be innocent than defendants of other races."[25]  The study

6   concluded that "it is possible that Asian-Americans are prosecuted more often because they

7   commit espionage more often," but noted "it is also possible that they are prosecuted more often

8   because the DOJ has focused more resources to detect and punish spying related to Asian

9   countries and defendants and so spends fewer resources investigating espionage conducted by

10  defendants of other races."[26]  One unfortunate result of this Sinophobic bias emerged in May

11  2015, when the U.S. Attorney for the Eastern District of Pennsylvania charged Xiaoxing Xi, a

12  Temple university physics professor, with four counts of wire fraud for allegedly sharing

13  restricted technology with colleagues in China.[27]  Four months later, the government was forced

14  to drop all charges, admitting that it had fundamentally misunderstood the technology at issue.

15  Professor Xi has filed suit against the government, alleging, among other claims, malicious

16  prosecution.[28]

17       Given the large overall disparities described above, it is unsurprising that many similarly

18  _____

19  [24] Sara O'Connell, "Expert Analysis: 5 Takeaways From DOJ Focus On Chinese Trade
    Secret Theft," *Law360* (July 17, 2019), https://www.law360.com/articles/1179271/5-takeaways-
20  from-doj-focus-on-chinese-trade-secret-theft.

21  [25] Andrew Chongseh Kim, *Prosecuting Chinese "Spies": An Empirical Analysis of the
    Economic Espionage Act*, 40 Cardozo L. Rev. 749, 820–21 (2018).  Although Huawei brings this
22  motion as under selective prosecution on the basis of nationality, not race, the two categories
    plainly overlap.

23  [26] *Id.*

24  [27] Press Release, U.S. Dep't of Justice, "University Professor Charged in Wire Fraud
    Scheme," (Mar. 21, 2015), https://www.justice.gov/usao-edpa/pr/university-professor-charged-
25  wire-fraud-scheme.

26  [28] Teresa Watanabe, "Is it police work or racial profiling? U.S. crackdown puts Chinese
    scholars on edge," *LA Times* (July 22, 2019), https://www.latimes.com/california/story/2019-07-
27  21/trump-china-racial-profiling-university-fbi-spy.

28

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 10

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

situated—and, indeed, far more egregious—examples of alleged trade secret theft have gone unprosecuted by federal authorities.  For example, in *Epic Systems Corporation v. Tata Consultancy Services, Ltd.*, *et al.*, No. 14-cv-748 (W.D. Wis. Oct. 31, 2014), the jury awarded $420 million in damages, and found that defendant Tata Consultancy Services ("TCS") committed "willful and wanton" misappropriation of trade secrets.  (The case is currently on appeal.)  Yet, there is no indication the federal government plans to bring criminal charges against TCS, an Indian multinational company.

Likewise, in *Wellogix Inc. v. BP America Inc. et al.*, 3:08-cv-00119 (S.D. Tex. Nov. 4, 2011), the plaintiff was awarded $44.4 million in damages, including $18.2 million in punitive damages.  The Fifth Circuit affirmed the amount.  *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013).  The government again brought no criminal charges against the co-defendants BP America, a U.S. subsidiary of a British company, or Accenture LLP, a U.S. subsidiary of an Irish Company.  And in 2016, a jury imposed a damages award of $70 million on Canadian company Neovasc Inc., but, again, no criminal charges have been brought.  *See CardiAQ Valve Technologies, Inc. v. Neovasc Inc. et al*, No. 14-cv-12405-ADB (D. Mass. Nov. 24, 2017).  Individuals and companies from many nations commit trade secret theft and economic espionage, yet by DOJ's own admission, "90 percent" of its criminal cases involve Chinese nationals or companies.

In addition, Huawei Device has conducted its own survey of federal civil trade-secret cases decided within the past decade in which the plaintiff prevailed but no finding of willfulness or malicious conduct was entered against the defendant.  Of those 20 cases selected, Huawei Device could identify not a single instance, other than the present Indictment, in which the government subsequently filed criminal charges against the corporate defendant based on theft of trade secrets.[29]  Notably, none of the other defendants in these cases were organized or domiciled in China.  In sum, Huawei Device is unaware of any similarly situated, non-Chinese defendant to

---

[29] Exhibit B, at 9-11.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 11

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

be prosecuted for trade secret theft under the circumstances presented in this case.

This is unsurprising, because the government's recent surge in criminal prosecutions of Chinese defendants for alleged civil violations of trade secret law is unprecedented, and plainly not motivated by legitimate law-enforcement concerns for the integrity of trade secrets.[30]  *See Branch Ministries*, 970 F. Supp. at 17 ("The very rarity of an official act can support a finding" of discrimination).  In light of these examples, the government's decision to pursue a criminal Indictment in this matter, after a civil jury awarded **zero** damages and declined to find any willful or malicious trade secret violations, is extraordinary evidence that the government is pursuing an unlawful prosecution.

It is beyond dispute that Chinese companies and individuals are being singled out for an unprecedented surge in prosecutions of what were, up to this point, properly deemed civil matters.  The prosecution against Huawei Device is only the latest, and most egregious, example of this illegally disparate treatment.

**B.      The Government's Prosecution is Unconstitutionally Motivated by Huawei China's Nationality.**

The government's decision to prosecute Huawei Device in 2019, based on civil claims from 2013 and 2014, which were already litigated in this district from 2014 to 2017, stems from Huawei China's national origin.  In the current political climate, where the federal government is engaged in both a 5G technology race and a trade war with China, this prosecution is undoubtedly one of many efforts by the government to secure leverage in trade negotiations. This discriminatory motive, based on nationality, is unconstitutional.

**1.      The Government's Decision to Prosecute Huawei Device is Contrary to its Own Guidelines.**

The Justice Manual (formerly known as the United States Attorneys' Manual) sets forth several factors for prosecutors to consider in deciding whether to pursue cases under 18 U.S.C. §

---

[30] "3 Trends In Criminal Trade Secret Prosecution," *supra* n.23 ("Criminal trade secret prosecutions are on the rise nationwide and in the Northern District of California, especially cases relating to alleged theft by Chinese nationals and entities.").

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 12

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

1832, in light of the fact that the statute was "not intended to criminalize every theft of trade secrets for which civil remedies may exist under state law."[31]

> Appropriate discretionary factors to be considered in deciding whether to initiate a prosecution under § 1831 or § 1832 include:  (a) the scope of the criminal activity, including evidence of involvement by a foreign government, foreign agent or foreign instrumentality; (b) the degree of economic injury to the trade secret owner; (c) the type of trade secret misappropriated; (d) the effectiveness of available civil remedies; and (e) the potential deterrent value of the prosecution.[32]

These factors plainly weigh against criminal prosecution in this case.  The "scope of the criminal activity" is limited to the alleged misappropriation of a T-Mobile testing protocol that occurred in connection with a business partnership—not piracy, espionage, or direct theft of intellectual property.  The government has put forward no evidence indicating that China, or any other foreign government, was involved in the conduct of this case; indeed, Huawei Device has not been charged with economic espionage under Section 1831.  The economic injury to the trade-secret owner, T-Mobile, was negligible, as evidenced by the civil jury's award of zero dollars in damages.  T-Mobile fully availed itself of the applicable civil remedies in this case; the fact that the jury awarded no damages does not mean the civil remedy was ineffective.  Finally, there was no need to further deter the alleged conduct at issue here, which a jury has already found to be harmless, and which ended years prior upon the termination of Huawei Device's business relationship with T-Mobile.

The Department's own guidance, therefore, provides no support for the government's decision to prosecute Huawei Device, thus suggesting that another motivation led to this prosecution.

## 2.    This Prosecution Is Motivated By Huawei China's National Identity.

The government's decision to prosecute Huawei Device in 2019 was a political calculation based primarily on Huawei China's status as a major Chinese technology company.

---

[31] U.S. Dep't of Justice, Justice Manual § 9-59.000, https://www.justice.gov/jm/jm-9-59000-economic-espionage (last visited July 12, 2019).

[32] *Id.*

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 13

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

This conclusion follows from two sources of evidence:  (1) the government's conspicuous delay in bringing forward an Indictment during (or soon after) the civil proceedings, from 2014 to 2017, and (2) the statements and actions of executive branch officials in 2018 and 2019.  Both sets of facts demonstrate that this prosecution was motivated by an improper purpose.

Untimely delay in prosecution, once the government has notice of the allegations, has been held to indicate selective prosecution.  *See United States v. Falk*, 479 F.2d 616, 622-24 (7th Cir. 1973) (en banc) (finding that defendant had made *prima facie* case of selective prosecution, where an almost three-year delay in bringing the indictment from the date the government had notice of the underlying facts "add[ed] forceful weight" to the defendant's argument).  The government has been well aware of the allegations underlying this matter for over four years, since before T-Mobile filed its civil complaint in this district on September 2, 2014.  Indeed, Huawei Device has learned through discovery that the FBI met with representatives of T-Mobile on August 20, 2013, to discuss T-Mobile's allegations of trade-secret misappropriation against Huawei Device.[33]  The government could have chosen to prosecute Huawei Device at that time, or at any point during the civil litigation, or even earlier, but did not.  An ulterior, unconstitutional motive is the best explanation for the government's curious delay in pursuing its prosecution against Huawei Device.

Furthermore, statements made and actions taken by the Executive are especially relevant evidence of the government's motivation.  In some cases, such statements were made by an executive official about the reason for pursuing the particular case, or indicated that an unusual combination of executive officials were involved in the decision to prosecute.  In *Falk* the Seventh Circuit held that the defendant established a *prima facie* case of selective prosecution where an Assistant United States Attorney had stated that the defendant's counseling of others to legally avoid the military draft was one of the reasons for his prosecution, and that "officials

---

[33] Exhibit C, FD-1057, "Interview of T-Mobile," conducted by James D. Clements (Aug. 22, 2013).

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 14

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

ranging from an Assistant Attorney to the Department of Justice in Washington participated in the decision" to prosecute.  *Falk*, 479 F.2d at 621–23.

However, the statements need not be so specific to constitute evidence of improper motivation.  In *United States v. Gordon*, a DOJ spokesperson's statement that voter fraud investigations were part of a "new policy . . . brought on by the 'arrogance on the part of blacks' in these counties" contributed to the Eleventh Circuit's finding that a black defendant in a voting fraud case was entitled to discovery and an evidentiary hearing on selective prosecution.  817 F.2d 1538, 1540 (11th Cir. 1987) (ellipsis in original).  More recently, the U.S. District Court for the Central District of California found sufficient evidence of discriminatory intent to require discovery based on a statement made by then-Treasury Secretary Geithner:  after Secretary Geithner expressed anger regarding Standard & Poor's downgrade of the credit rating for United States debt in conversations to other executive officials, he stated publicly that Standard & Poor's conduct would be "looked at very carefully."  *See McGraw-Hill Companies, Inc.*, 2014 WL 1647385, at *12.

In this case, the press conference announcing the Indictment made clear that a number of government agencies—the Department of Homeland Security, the Department of Commerce, and the Federal Bureau of Investigation, in addition to DOJ and the United States Attorneys for at least two districts—were coordinating to pursue a variety of actions against Huawei and its affiliates because of their Chinese national origin.[34]  Senior executive branch officials made broad statements at the press conference about pursuing criminal prosecutions against Chinese companies and other vague, unsupported allegations of "immense influence" by the Chinese

---

[34] Acting Attorney General Whitaker News Conference, C-Span (Jan. 28, 2019), https://www.c-span.org/video/?457336-1/acting-attorney-general-whitaker-announces-indictments-chinese-company-huawei.  Attorney General Whitaker stated that the cases being announced had been "a team effort across multiple U.S. Cabinet agencies and across multiple divisions and U.S. Attorneys' offices."  *Id.*

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 15

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

1   government over Chinese corporations "like Huawei."[35]  As in prior government statements

2   about Huawei, national security concerns were claimed with little to no evidentiary support.[36]

3          Indeed, the government's internal documents indicate that the government was motivated

4   to target Chinese companies for nationalist economic reasons.  In particular, one Congressional

5   Investigative Report recommended that "[t]he United States should view with suspicion the

6   continued penetration of the U.S. telecommunications market by Chinese telecommunications

7   companies."[37]  The Report singled out Huawei Technologies Company as an "indigenous

8   Chinese firm" and expressed concern that Huawei and another Chinese company, ZTE, "are

9

10         [35] Attorney General Whitaker stated that "[A]s I told high-level Chinese law enforcement
    officials in August when I visited their country, we need more law enforcement cooperation with
11   China.  China should be concerned about criminal activities by Chinese companies and China
    should take action."  *Id.*  FBI Director Wray asserted that "[t]he immense influence that the
12   Chinese government holds over Chinese corporations like Huawei represents a threat to [U.S.
    economic and national security]," including "giv[ing] a foreign government the capacity to
13   maliciously modify or steal information to conduct undetected espionage, or to exert pressure, or
    control."  *Id.*
14

15         [36] To name a few examples, starting as early as 2005, U.S. government agencies
    commissioned reports that asserted, without citing any evidence, that Huawei was deeply tied to
16   the Chinese government and the People's Liberation Army.  Evan S. Medeiros et al., *A New
    Direction for China's Defense Industry* at ii, 218, RAND Corp. (2005)
17   https://www.rand.org/content/dam/rand/pubs/monographs/2005/RAND_MG334.pdf; Janie
    Hulse, *China's Expansion into and U.S. Withdrawal from Argentina's Telecommunications and
18   Space Industries and the Implications for U.S. National Security* at i-ii, vii, 10, Strategic Studies
    Inst. (Sept. 2007), https://ssi.armywarcollege.edu/pubs/display.cfm?pubID=806.  A House
19   Permanent Select Committee on Intelligence investigation into Huawei Technologies Company
    (a separate entity from defendants Huawei China, and Huawei USA) resulted in a 2012 report
20   recommending a variety of anti-Huawei measures based on vague allegations, references to
    media reports, and a classified appendix.  H.R. Permanent Select Committee on Intelligence,
21   *Investigative Report on the U.S. National Security Issues Posed by Chinese Telecommunications
    Companies Huawei and ZTE*, (Oct. 8, 2012), https://republicans-
22   intelligence.house.gov/sites/intelligence.house.gov/files/documents/huawei-
    zte%20investigative%20report%20(final).pdf.  Huawei has repeatedly and emphatically denied
23   the allegations, including in an open letter published by the *Wall Street Journal* in 2011.  *See,
    e.g.*, Ken Hu, "Huawei Open Letter," *Wall St. J.* (Feb. 5, 2011), at 2-5,
24   http://online.wsj.com/public/resources/documents/Huawei20110205.pdf.

25         [37] H.R. Permanent Select Committee on Intelligence, *Investigative Report on the U.S.
    National Security Issues Posed by Chinese Telecommunications Companies Huawei and ZTE*,
26   (Oct. 8, 2012), *supra* n.36 at 45.

27

28

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 16

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

1   rapidly becoming dominant global players in the telecommunications market."[38]  Another Report

2   worried that Huawei is becoming a "major developer[] of 5G mobile network standards."[39]  And

3   a since-published internal memo warned that the U.S. may lose its '5G Race' to China due to

4   lack of competitive domestic technologies.  Recognizing Huawei's global leadership as a

5   fundamental risk to the 5G Race, the report recommended "informal restrictions against

6   [Huawei's] inclusion in national networks"[40]

7          These internal concerns were often expressed publicly as well.  On April 22, 2019,

8   President Trump delivered a speech at the White House regarding the competition between U.S.

9   and China over 5G technologies.  He declared, "We cannot allow any other country to out-

10  compete the United States in this powerful industry of the future.  We are leading by so much in

11  so many different industries of that type, and we just can't let that happen.  The race to 5G is a

12  race America must win."[41]  On July 23, 2019, FBI Director Christopher Wray testified before the

13  Senate Judiciary Committee that China is trying to "steal their way up the economic ladder at our

14  expense," and that the FBI currently has 1,000 investigations underway on intellectual property

15  theft, "almost all leading back to China."[42]

16         Tellingly, despite the Executive's supposed intellectual property and security concerns

17  regarding Chinese devices, it quickly altered its stance regarding Huawei and its affiliates when

18  it believed doing so would be advantageous in trade negotiations with China.  Indeed, President

19  _____

20         [38] *Id.* at 2, 8.

21         [39] U.S.-China Economic and Security Review Commission, Investigative Report (Nov.
    2017) at 165.

22         [40] U.S. National Security Council, "Secure 5G", (Jan. 2018), (embedded full memo) at 8,
23  https://www.axios.com/trump-team-debates-nationalizing-5g-network-f1e92a49-60f2-4e3e-
    acd4-f3eb03d910ff.html.

24         [41] "Remarks by President Trump on United States 5G Deployment," (Apr. 12, 2019),
25  https://www.whitehouse.gov/briefings-statements/remarks-president-trump-united-states-5g-
    deployment/.

26         [42] Steven T. Dennis, "FBI Chief Says China Is Trying to 'Steal Their Way' to
    Dominance," *Bloomberg* (July 23, 2019), https://www.bloomberg.com/news/articles/2019-07-
27  23/fbi-chief-says-china-s-trying-to-steal-their-way-to-dominance.

28

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 17

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

Trump went so far as to declare that he would intervene in the criminal case against Huawei's Chief Financial Officer if it would help the United States and China reach a trade agreement.  "If I think it's good for what will be certainly the largest trade deal ever made—which is a very important thing—what's good for national security—I would certainly intervene if I thought it was necessary," Trump stated.[43]  And in May 2019, shortly after the Department of Commerce placed Huawei and its affiliates on the Entity List, President Trump suggested that the government's concerns could be resolved as part of a trade deal with China:  "It's possible that Huawei even would be included in a trade deal.  If we made a deal, I could imagine Huawei being possibly included in some form of, or in some part of, a trade deal."[44]  More recently, after trade talks resumed with China in June 2019, President Trump announced that restrictions on Huawei would be relaxed to allow U.S. companies to purchase equipment from Huawei, but that Huawei would remain on the Entity List, noting "[we] agreed to leave that—we're leaving Huawei toward the end.  We're going to see.  We'll see where we go with the trade agreement."[45]

It is patently obvious from the above-cited public record that Huawei Device has become a pawn in the government's 5G race and trade war with China.  This prosecution is being used as leverage in trade discussions precisely because Huawei China is a major company of Chinese origin.  It therefore unconstitutionally discriminates against Huawei based on its national origin.  This nationalist, politically motivated Indictment should be dismissed.

---

[43] Jeff Mason and Steve Holland, "Exclusive: Trump says he could intervene in U.S. case against Huawei CFO," Reuters (Dec. 11, 2018), https://www.reuters.com/article/us-usa-trump-huawei-tech-exclusive/exclusive-trump-says-he-could-intervene-in-u-s-case-against-huawei-cfo-idUSKBN1OA2PQ.

[44] Jeanne Whalen and David J. Lynch, *Trump calls Huawei 'dangerous' but says dispute could be resolved in trade deal*, Wash. Post (May 23, 2019), https://www.washingtonpost.com/business/economy/trump-calls-huawei-dangerous-but-says-dispute-could-be-resolved-in-trade-deal/2019/05/23/ed75c4a0-7da6-11e9-8ede-f4abf521ef17_story.html?noredirect=on&utm_term=.d4d62d151e6d.

[45] White House Statements, "Remarks by President Trump in Press Conference | Osaka, Japan," (June 29, 2019), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-press-conference-osaka-japan/.

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 18

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

## II.      At the Very Least, Huawei Device is Entitled to Discovery

Even if the Court concludes that Huawei Device has not demonstrated selective prosecution through the "staggering" statistical disparity against Chinese defendants and the Executive's own statements and actions, it has plainly made a "credible showing" sufficient to warrant further discovery.  The Ninth Circuit has recognized that a defendant bringing a selective prosecution claim "will face a dilemma: to obtain discovery, a defendant must show discriminatory intent; but to sufficiently show discriminatory intent, the defendant needs discovered documents."  *Bourgeois*, 964 F.2d 935, 939.  The Supreme Court in *Armstrong* recognized this Catch-22 and carefully set a lower standard for discovery to support selective prosecution claims, because the strongest evidence for such a claim is uniquely in the possession and control of the government.

The colorable showing may therefore be based on circumstantial evidence.  *See McGraw-Hill Companies, Inc.*, No. 13-779, 2014 WL 1647385, at *12.  "If the Supreme Court meant to hold defendants to actual knowledge of a discriminatory choice on the part of a prosecutor—which, after all, would encompass the underlying claim of selective prosecution—the discovery standard would be impossible to meet.  It is exceedingly rare for a prosecutor to admit that the decision to prosecute was based on ethnicity or nationality."  *United States v. Tuitt*, 68 F. Supp. 2d 4, 10 (D. Mass. 1999).  To obtain such evidence requires discovery of all the communications and factors that went into the government's decision to bring this prosecution.

The evidence set forth above more than adequately provides a "credible showing" of selective prosecution sufficient to warrant further discovery.  *Reese*, 60 F.3d at 662 (single statistical study showing that "the vast majority" of defendants in crack-related prosecutions were African-American "alone could provide the necessary support for a colorable basis determination"); *United States v. McGill*, 68 F.3d 481 (9th Cir. 1995) (Table) (same); *United States v. Al Jibori*, 90 F.3d 22, 26 (2d Cir. 1996) (ordering further discovery where the court was aware of only two similarly situated offenders and "the only established commonality between the two [wa]s their national (or regional) origin, a consideration which standing alone is an

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 19

Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

1   unconstitutional basis for selecting prosecution"); *McGraw-Hill Companies, Inc.*, 2014 WL

2   1647385 at *12 (finding discovery warranted where defendant had provided "some evidence

3   tending to show the existence of an improper purpose" based on political comments made by the

4   Treasury Secretary).

5        Discovery is particularly appropriate here, where there is strong evidence of improper

6   motive on the part of the Executive.  Although disproportionately high levels of prosecution of

7   trade secrets cases have persisted against Chinese nationals for years, the most recent escalation

8   of selective prosecution began only in 2017.  As a result, it is unreasonable to expect Huawei

9   Device to demonstrate selective prosecution through statistical analysis of the public record

10   alone.  Moreover, evidence of selective prosecution frequently depends upon the absence of

11   evidence—that is, the decision not to prosecute similarly situated offenders.  *Branch Ministries*,

12   970 F. Supp. at 17 (holding that "plaintiffs have produced sufficient evidence to raise a colorable

13   claim of intentional discrimination" meriting discovery even though "plaintiffs' evidence

14   consists mostly of the absence of other similar actions by the IRS").  Discovery of the

15   Executive's deliberative communications, therefore, would uncover probative evidence of

16   selective prosecution that the publicly available evidence credibly suggests.

17        Specifically, Huawei Device requests discovery relating to the government's decision to

18   prosecute it within the possession or control of each government department or agency involved

19   in prosecuting Huawei Device as part of the broader political and economic offensive against

20   Chinese companies and nationals.[46]  Such discovery would include many of the requests Huawei

21

22   ─────────────────

22   [46] *See* Speech by Acting Attorney General Whitaker, "The cases we are announcing today

23   [against Huawei] have truly been a team effort across multiple U.S. Cabinet agencies and across
     multiple Divisions and U.S. Attorneys' offices within the Department of Justice," (Jan. 28,

24   2019), https://www.justice.gov/opa/speech/acting-attorney-general-matthew-whitaker-
     announces-national-security-related-criminal.  This broad array of government departments and

25   agencies includes Department of Justice – Criminal Division, Department of Justice – National
     Security Division, United States Attorney's Office for the Eastern District of New York, United

26   States Attorney's Office for the Western District of Washington, the House of Representatives
     Permanent Select Committee on Intelligence and any subcommittee thereof, the FBI, the Federal

27   Communications Commission, the Department of Homeland Security, the Treasury Department,

28

**Yarmuth** LLP

1  Device already lodged with the government in its letter dated March 15, 2019, attached herein as

2  Exhibit A.  In particular, Requests 11 through 30 are tailored to uncover probative evidence of

3  selective prosecution with respect to Huawei Device, without revealing or encumbering the

4  government's general policy deliberations.  The government has so far denied Huawei Device's

5  request for such discovery; the above credible showing of selective prosecution mandates that

6  the government turn over that material without further delay.

7  **CONCLUSION**

8    For the foregoing reasons, the Court should dismiss the Indictment on the grounds of

9  selective prosecution.  Alternatively, the Court should grant Huawei Device its requested

10  discovery to further substantiate its selective prosecution claim.

---

25  the Department of Commerce, the Department of Defense, the National Security Agency, the

26  Committee on Foreign Investment in the United States, and any other federal, state, or local

agency allied with the prosecution or involved in any way in investigating the activities alleged

27  in the Indictment or related conduct.

28



Yarmuth LLP

1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

Respectfully submitted,

Dated: August 1, 2019

**YARMUTH LLP**

By: *s/ Robert Westinghouse*
Robert Westinghouse, WSBA No. 6484
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Telephone: (206) 516-3800
Fax: (206) 516-3888
rwestinghouse@yarmuth.com

**STEPTOE & JOHNSON LLP**

James F. Hibey (*pro hac vice*)
Brian M. Heberlig (*pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
jhibey@steptoe.com
bheberlig@steptoe.com

*Attorneys for Huawei Device Co., Ltd., and
Huawei Device USA, Inc.*

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 22

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Government**

Todd Greenberg
Thomas M. Woods
Siddharth Velamoor
U.S. Attorney's Office (Sea)
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Tel: 206.553.7970
Todd.Greenberg4@usdoj.gov
Thomas.woods2@usdoj.gov
Siddharth.Velamoor@usdoj.gov

DATED:  August 1, 2019, at Seattle, Washington.

_s/ Vassie Skoulis_

Vassie Skoulis, Legal Assistant

DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 23

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

# Exhibit A to Defendants' Motion to Dismiss the Indictment For Selective Prosecution, Or in the Alternative, For Discovery

James F. Hibey
202 429 6407
jhibey@steptoe.com

Brian M. Heberlig
202 429 8134
bheberlig@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com



March 15, 2019

**By Electronic Mail**

AUSA Todd Greenberg
AUSA Thomas M. Woods
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

      Re:    *United States v. Huawei Device Co., Ltd., and Huawei Device USA, Inc.*,
              Case No. 2:19-cr-00010-RSM (W.D. Wa.)
              <u>Defendants' First Request for Discovery and *Brady* Material</u>

Dear Counsel:

On behalf of Defendants Huawei Device Co., Ltd. ("Huawei China") and Huawei Device USA, Inc. ("Huawei USA") (collectively "Huawei"), we request that the government provide "open file" discovery in this case, including the prompt production of all documents and other evidence it has obtained in its investigation and all grand jury transcripts, FBI 302s, and interview memoranda.

In the event that you elect not to provide "open file" discovery, Huawei respectfully submits this formal request for discovery in this case, pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rules 12, 16, and 26.2 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery," and the additional authority set forth below.

BEIJING      BRUSSELS      CHICAGO      LONDON      LOS ANGELES      NEW YORK      PHOENIX      SAN FRANCISCO      WASHINGTON

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 25

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 2



Huawei requests that you produce and/or permit it to inspect and copy or photograph the materials specified below.  This request encompasses not only documents[1] and information in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Western District of Washington ("USAO"), but also documents and information in the possession, custody, and control of, or that have been reviewed by, the Department of Justice's Criminal Division, the Department of Justice's National Security Division ("NSD"), the U.S. Attorney's Office for the Eastern District of New York ("USAO-EDNY"), the House Permanent Select Committee on Intelligence, any Congressional committees or subcommittees, and any federal, state or local agency allied with the prosecution or involved in any way in investigating the activities alleged in the Indictment or related conduct, including but not limited to the Federal Bureau of Investigation ("FBI"), the Federal Communications Commission ("FCC"), the Department of Homeland Security ("DHS"), the Treasury Department ("Treasury"), the Department of Commerce ("Commerce"), the Department of Defense ("Defense"), the National Security Agency ("NSA"), the Committee on Foreign Investment in the United States ("CFIUS"), or local law enforcement agencies or investigatory bodies that participated in the investigation.  As used in this letter, the words "government" and "you" include your office and the above-referenced federal, state, or local agencies.

Huawei requests that the government comply with all of its discovery obligations under federal law, including, but not limited to, the following:[2]

## I.   Statements of the Defendant

1.      Any written or recorded statements within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government, by any current or former Huawei directors, officers, employees, or agents, or any other person for whom the government contends that the person making the statement satisfies the requirements of Fed. R. Crim. P. 16(a)(1)(C)(i) or (ii) with respect to Huawei ("Rule 16(a)(1)(C) person").  This request includes, without limitation:

---

[1] The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text messages, instant messages, other computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

[2] All of these requests are continuing in nature, requiring supplementation in accordance with Fed. R. Crim. P. 16(c).

2

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 3



     a.     All interview memoranda summarizing the interviews of any Rule 16(a)(1)(C) person, including all drafts of such interview memoranda;

     b.     All raw notes of prosecutors and FBI agents, taken during interviews of any Rule 16(a)(1)(C) person.  With respect to notes taken via computer during the interview, we request electronic copies of all versions of such notes, as well as the metadata for such notes reflecting the time and date when such versions were created and modified;

     c.     All transcripts and/or recordings of conversations in which a Rule 16(a)(1)(C) person was a participant;

     d.     All wire and oral communications made by a Rule 16(a)(1)(C) person that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government, including both classified and non-classified information;

     e.     All wire and oral communications made by a Rule 16(a)(1)(C) person that were obtained pursuant to a United States Foreign Intelligence Surveillance Court ("FISA") warrant, or any other warrant;

     f.     All written or recorded statements of witnesses that reflect, relate, or incorporate any statements made by a Rule 16(a)(1)(C) person; and

     g.     All other documents that purport to reflect, relate, or incorporate any statements made by a Rule 16(a)(1)(C) person, including both classified and non-classified documents.

     2.     The portion of any written record containing the substance of any oral statement made by a Rule 16(a)(1)(C) person, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a government agent.  *See* Fed. R. Crim. P. 16(a)(1)(B)(ii).  This request includes without limitation, all documents, including notes, prepared by any government employee or agent that contain the substance of any relevant statement made by a Rule 16(a)(1)(C) person.

     3.     The substance of any other oral statement made by a Rule 16(a)(1)(C) person, whether before or after arrest, in response to interrogation by any person then known by the Rule 16(a)(1)(C) person to be a government agent, if the prosecution intends to use that statement at trial.  *See* Fed. R. Crim. P. 16(a)(1)(A).

     The government is required to produce Rule 16(a)(1)(C) statements in its initial discovery production, which must be completed by March 29, 2019 under the Case Scheduling Order.  "The purpose of the amendment of the rule was to give corporate defendants discovery rights that would be parallel to those of individual defendants."  *See United States v. Bhutani*, No. 93 CR 585, 1995 WL 632069, at *2 (N.D. Ill. Sept. 1, 1995).  "Because an organizational defendant

3

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 27

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 4



may not know what its officers or agents have said or done in regard to a charged offense, it is important that it have access to statements made by persons whose statements or actions could be binding on the defendant." Fed. R. Crim. P. 16, Advisory Committee Notes to 1994 Amendments. As statements made by the defendant, Rule 16(a)(1)(C) statements are exempt from the Jencks Act and must be produced earlier with the other Rule 16 discovery materials. *See United States v. Chalmers,* 410 F. Supp. 2d 278, 292 (S.D.N.Y. 2006). If you disagree with this position, and do not intend to produce Rule 16(a)(1)(C) statements with the initial discovery, please let us know immediately.

## II.    Documents and Tangible Objects

1.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that were obtained from or belong to Huawei, or that belonged to Huawei at the time of the alleged offenses, or that belong or belonged to any agent of Huawei or any entity allegedly owned or controlled by Huawei. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).

2.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that the government intends to use at trial in its case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii). We request that any materials in this category be specifically identified from among the materials produced pursuant to Huawei's other Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Huawei an opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief. *See* Fed. R. Crim. P. 12(b)(3) and 12(d)(2).

3.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are material to the preparation of Huawei's defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i), including, but not limited to, those items set forth in paragraphs II.4 to II.30 below.

4.    All documents relating to Huawei China, Huawei USA, or any parent, subsidiary, affiliated or related companies, or to the conduct alleged in the indictment, including documents obtained by the government (a) pursuant to any grand jury subpoena, (b) from any witness who testified before the grand jury or who was interviewed or consulted during the course of the government's investigation, (c) pursuant to a search warrant or other search or seizure, and/or (d) from any federal, state or local governmental, regulatory or legislative body or agency.

5.    All documents relating to the allegation: "In 2003, Cisco sued Huawei alleging that Huawei had stolen Cisco's proprietary network router technology and related source code for use in Huawei's own computing routers." Indictment ¶ 38.

6.    All documents relating to the allegation: "In 2010, Motorola sued Huawei alleging that it had misappropriated Motorola's proprietary wireless switching technology by acquiring it surreptitiously from Chinese Motorola engineers." *Id.*

4

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 28

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 5



7.      All documents relating to the investigation of, and October 2, 2012 report by, the United States House of Representatives Permanent Select Committee on Intelligence referenced in ¶ 38 of the Indictment.

8.      All documents obtained from T-Mobile USA, Inc. or its subsidiaries, affiliates, agents or representatives (collectively, "T-Mobile") relating to Huawei, including documents relating to T-Mobile's investigation into the conduct alleged in the Indictment.

9.      All communications between the government and T-Mobile relating to Huawei.

10.      All documents relating to Huawei or the conduct alleged in the indictment that were introduced as exhibits before the grand jury.  We request that any materials in this category be specifically identified from among the materials produced pursuant to Huawei's other Rule 16 and *Brady* requests.

11.      All documents relating to the reputation of Huawei or any Rule 16(a)(1)(C) person, including, without limitation, any documents relating to that person or entity's reputation for honesty, integrity, or competence.

12.      All documents relating to press releases or press conferences concerning Huawei or the investigation of Huawei, and all other documents relating to any contacts between the government and representatives of the media concerning Huawei or the investigation of Huawei.

13.      All documents and communications, received, prepared or created by Treasury, Commerce, DHS, Defense, CFIUS, FCC, or any Congressional committees or subcommittees in connection with any investigations into Huawei, including all documents obtained from the U.S. House of Representatives Permanent Select Committee on Intelligence.

14.      All documents or communications between the USAO, DOJ, FBI, NSA, CFIUS, or any other federal agency, and any company or entity, relating to decisions by any company or entity not to select Huawei as a vendor in the United States market or to stop selling Huawei products, including but not limited to communications with AT&T, Verizon, and Best Buy.

15.      All documents and communications relating to any involvement by the USAO, DOJ, FBI, NSA, CFIUS, or any other federal agency in the introduction and consideration of H.R. 4747 and H.R. 7255 in the U.S. House of Representatives during the 115th Congress, and the Telecommunications Denial Order Enforcement Act (H.R. 7255) in the 116th Congress.

16.      All documents and communications relating to any involvement by the USAO, DOJ, FBI, NSA, CFIUS, or any other federal agency in the introduction and consideration of S. 2391 in the U.S. Senate during the115th Congress.

17.      All standards, policies, practices, or criteria employed by the USAO or DOJ to guard against the influence of racial, ethnic, national origin, political, or other arbitrary or invidious factors in the selection of cases and defendants for prosecution.

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 6



18.     Any and all manuals, handbooks, pamphlets, memoranda and other documents containing information regarding the policies or practices of the USAO, DOJ, all federal law enforcement and/or investigative agencies concerning prosecution for offenses under 18 U.S.C. § 1832.

19.     A list of all federal cases in the last ten (10) years in which the defendant was charged with an offense under 18 U.S.C. § 1832, including the racial or ethnic identity and the national origin of each defendant.

20.     Any statistics indicating the racial or ethnicity and national origin of potential defendants that the government declined to prosecute in the last ten (10) years under 18 U.S.C. § 1832.

21.     All documents indicating in any way that the decision to prosecute Huawei in this matter was motivated by its racial or ethnic identity or national origin.

22.     All documents or information related to a) Huawei and/or b) the conduct alleged in the Indictment that the government obtained pursuant to a FISA warrant, including the warrant and warrant application that led to such documents or information.

23.     All documents or information related to statements by the FBI Director at a February 13, 2018 hearing before the Senate Intelligence Committee regarding purported national security risks posed by Huawei.

24.     All documents or information related to objections by CFIUS to the hostile takeover of Qualcomm by Broadcom, including documents or information related to the purportedly "well-known U.S. national security concerns about Huawei and other Chinese telecommunications companies" referenced in the March 5, 2018 CFIUS letter regarding this proposed transaction.

25.     All documents or information related to the Federal Communications Commission's April 17, 2018 Notice of Proposed Rulemaking titled "Protecting Against National Security Threats to the Communications Supply Chain Through FCC Programs," relating to the Notice's statements regarding Huawei.

26.     All documents or information related to the inclusion of "Telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities)" in the definition of "covered telecommunications equipment or services," in the National Defense Authorization Act, including the use of this definition in Section 889 of the Act.

27.     All documents or information related to DOJ's Initiative to Combat Chinese Economic Espionage announced by the Attorney General on November 1, 2018.

6



AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 7

28.     All documents or information related to statements by the FBI Director at a January 29, 2019 hearing before the Senate Select Intelligence Committee regarding purported national security risks posed by Huawei.

29.     All documents or information related to statements made at a January 29, 2019 Senate Armed Services Committee hearing regarding purported legal, national security, unfair trade and investment, and competitive technology risks posed by Huawei.

30.     All documents and communications relating to any involvement by the USAO, DOJ, FBI, NSA, CFIUS, or any other federal agency in the February 21, 2019 Suspension Letter issued by the Department of the Air Force against Huawei Technologies Co., Ltd., *et. al*.

## III.     *Brady* and *Giglio* Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and Washington Rule of Professional Conduct 3.8, Huawei requests immediate identification and disclosure of all documents and information that are favorable to the defense or that would tend to exculpate Huawei with respect to the charges in the indictment, that would tend to impeach the witnesses against Huawei, or that are relevant to the issue of sentencing, including but not limited to the following:

1.     Any document or information indicating or tending to establish that any of the allegations in the indictment are not true.

2.     Any document or information indicating or tending to establish that any meeting, conversation, use of words, or practice that is the subject of the indictment did not violate government laws, regulations, standards or established business practices.

3.     Any document or information indicating or tending to establish that Huawei did not instigate, control, authorize, approve, or acquiesce in the activities that are the subject of the indictment.

4.     Any document or information indicating that T-Mobile was aware of Huawei's attempts to build a robotic testing system similar to the Tappy robotic testing system, including but not limited to:

> a.     All internal T-Mobile communications regarding Huawei's efforts to comply with, satisfy, or copy the Tappy robotic testing system;

> b.     All internal T-Mobile communications regarding Huawei's efforts to obtain information regarding the Tappy robotic testing system.

7

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 8



5.      Any document or information regarding security violations or breaches of any type involving the Tappy robotic testing system, the Tappy laboratory, and/or other T-Mobile equipment or areas subject to security protections, including but not limited to:

      a.      Any unauthorized photographs taken of such protected equipment or in such protected areas;

      b.      Any unauthorized procurements of protected equipment or measurements;

      c.      Any unauthorized entries into protected areas;

      d.      Any internal investigation reports of such security violations or breaches; and/or

      e.      Any actions taken by T-Mobile in direct or indirect response to such security violations or breaches.

6.      Any document or information indicating or tending to establish that OEM's other than Huawei, inquired regarding purchasing the Tappy robotic testing system in whole or in part, including any attempts to obtain, or requests to receive, information about the hardware or software associated with Tappy or the operation of Tappy, including T-Mobile's response to any such requests.

7.      Any document or information indicating or tending to establish that other OEMs experienced difficulties attempting to meet, comply with, or satisfy the testing performed by the Tappy robotic testing system.

8.      Any document or information indicating or tending to establish that the Tappy robotic testing system is no longer unique or valuable or that it is of lesser value, including but not limited to:

      a.      All T-Mobile communications indicating or tending to establish that T-Mobile has, in the period after the events alleged in the Indictment, eliminated, reduced, or modified its use of the Tappy robotic testing system;

      b.      All T-Mobile communications indicating or tending to establish that the Tappy testing system or information about the has been sold, transferred, or shared with OEMs;

      c.      All T-Mobile communications indicating that an OEM has attempted to develop or has developed a robotic testing system similar to the Tappy testing system;

8

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 9



    d.    All T-Mobile communications indicating that an OEM attempted to copy, duplicate or reverse-engineer the Tappy robotic testing system, including T-Mobile's response to any such attempt; and/or

    e.    All public disclosures in the period after the events alleged in the Indictment regarding the Tappy testing system.

9.    The existence of any witness known to the government who is favorable to the defense together with any and all statements made or adopted by that witness (whether written, recorded, or the substance of such statement) within the possession, custody or control of the government, the existence of which is known, or may become known by the exercise of due diligence, to the government.

10.    Any document or information indicating or tending to establish that:

    a.    Huawei engaged in any conduct that forms the basis of the indictment in reliance upon advice provided by counsel or accountants; and

    b.    Huawei engaged in any conduct that forms the basis of the indictment with the good faith belief that its conduct did not constitute a crime.

11.    Any document or information that may be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

    a.    Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

    b.    Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or indirectly to the witness' attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations;

    c.    Any document or information tending to show the bias of a potential government witness, including animosity toward Huawei, animosity toward a group of which Huawei is a member or with which Huawei is affiliated, a relationship with the alleged victim, or known but uncharged

9

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 10



criminal conduct that may provide an incentive to curry favor with a prosecutor;

d.      Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance abuse, mental health issues or other issues that could affect the witness's ability to perceive and recall events;

e.      Any document or information relating to inconsistencies in statements given by any potential government witness;

f.      Any document or information relating to inconsistencies between agents' and/or prosecutors' rough notes and FBI 302s or other memoranda of interviews of any potential government witness;

g.      Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness; and

h.      Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.

12.     The date of and participants in each and every interview (including interviews conducted by third parties), debriefing, "queen for a day" session, proffer, deposition, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel).  In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Huawei engaged in any allegedly unlawful conduct or any conduct alleged in the indictment.

13.     With respect to the United States' *Ex Parte* Motion For Limited Unsealing of Indictment (ECF No. 3), in which the government "request[ed] that the Court unseal the Indictment for the limited purpose of allowing the Department of Justice to disclose it to and coordinate with appropriate representatives of the United States Department of State, other United States federal departments and agencies, and governmental authorities from Canada, as necessary to ensure appropriate coordination between these entities," provide:

a.      The identities of all "appropriate representatives" from the United States Department of State, other United States federal departments and agencies, and governmental authorities from Canada to whom the Indictment was disclosed;

b.      All communications between the USAO and representatives of the United States Department of State, other United States federal departments and agencies, and governmental authorities from Canada;

c.      Information regarding the "coordination" between those entities; and

10

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 11



      d.     The legal basis authorizing the government to disclose the Indictment to the "appropriate representatives" at issue.

    14.    Communications between and among the USAO, the USAO-EDNY, and NSD regarding the timing of the filing of criminal charges against Huawei.

    15.    Communications between and among the USAO, the Offices of the Attorney General and the Deputy Attorney General of the United States, and the White House regarding Huawei.

As you are aware, Washington has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of a Prosecutor," which provides that a prosecutor shall "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense and, in connection with sentencing, disclose to the defense and to the tribunal all mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal" Rule 3.8(d). The Supreme Court has recognized that ABA Model Rule 3.8 (which is substantively identical to Washington Rule 3.8) imposes a higher standard on prosecutors than the standards mandating disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[*Brady*] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate."); ABA Standards for Criminal Justice, Prosecution Function 3-5.4 (4th ed. 2015) (prosecutor should diligently identify all information in its possession which tends to negate the guilt of the accused or mitigate the offense charged and disclose such information to the defense); ABA Model Rule of Professional Conduct 3.8(d) (1984) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

We contend that the foregoing categories of information constitute *Brady* and Rule 3.8(d) material, and that disclosure should take place immediately. Huawei further requests that the government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above. The local criminal rules provide that at or before the initial discovery conference, the government shall "[a]dvise the attorney for the defendant and provide, if requested, evidence favorable to the defendant and material to the defendant's guilt or punishment to which he is entitled pursuant to Brady v. Maryland and its progeny." Rule 16(a)(2)(E), Local Rules, W.D. Wash. We contend that our meet and confer following the arraignment on February 28, 2019 served as the discovery conference in this matter. If you disagree, please let us know so we can schedule a discovery conference as soon as possible. Please advise us promptly whether the government will be producing all *Brady* material immediately, even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce some or all *Brady* material at this time.

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 12



We also request the underlying source material for any *Brady* and Rule 3.8(d) information, as opposed to any summary letter or paraphrased description of the information. Please advise us promptly if the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable."  Department Memorandum for Department Prosecutors Providing Guidance for Prosecutors Regarding Criminal Discovery, at 6 (Jan. 4, 2010).  For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email."  *Id.* We therefore expect that all such information will be memorialized and produced to Huawei.

Furthermore, we expect the government to take all necessary steps to ensure that all relevant agencies set forth above comply with the government's preservation and discovery obligations in criminal cases, do not delete any potentially relevant or exculpatory electronically store information (including emails), and produce such information forthwith.

## IV.    Purportedly Privileged Material

Huawei specifically requests that the government produce all documents or information (in whatever form) produced by any person or entity to the government—or over which the government otherwise has custody, control, or possession—that are responsive to Huawei's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any person or entity has asserted the attorney-client privilege and/or the attorney work product doctrine.  This request applies to all such documents produced pursuant to (a) a non-waiver agreement between the person or entity and the government, (b) a court order pursuant to Fed. R. Evid. 502, or (c) a court order concluding that the documents are covered by the crime-fraud exception to the attorney-client privilege.

Please advise us promptly whether the government will be producing these materials, or whether you contend that the materials are not discoverable and on what grounds.  To the extent that you intend to withhold any materials on privilege grounds, please provide a privilege log identifying the documents and the basis for nondisclosure.

Huawei also requests that you identify any person or entity that has asserted any attorney-client privilege, work product privilege, common interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Huawei further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges.

## V.    Purportedly Classified Material

Huawei specifically requests that the government produce all documents or information (in whatever form) produced by any person or entity to the government, obtained by the



AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 13

government pursuant to a FISA or other warrant, or over which the government otherwise has custody, control, or possession that are responsive to Huawei's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any person or entity has asserted a claim that the material is classified or protected by the state secrets privilege.

Please advise us promptly whether the government will be producing these materials, or whether you contend that the materials are not discoverable and on what grounds.  To the extent that you intend to withhold any materials on the grounds that such materials are classified or protected by the state secrets privilege, please provide a log identifying the documents and the basis for nondisclosure.

Huawei also requests that you identify any person or entity that has asserted any claim that documents or information are classified or protected by the state secrets privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Huawei further requests that you provide all documents (including all logs documenting such claims) with respect to the assertion of or challenge to any such claimed withholding.

## VI.   Criminal Records

Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Huawei China and Huawei USA request copies of their prior criminal records, if any.

## VII.   *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500 and Rule 26.2 of the Federal Rules of Criminal Procedure, Huawei requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements.  We request that the government provide this material as soon as possible, or in any event no later than December 2, 2019, as set forth in the Case Scheduling Order.

## VIII.   Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Huawei requests documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment.  This includes, but is not limited to:

1.   All forensic examinations of any computer hard drive or handheld mobile device that Huawei possessed or to which Huawei had access;

13

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 14



2.      All handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses;

3.      All fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions;

4.      All polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations;

5.      All reports or examinations relating to the allegation that the Tappy robot system technology, as described in ¶¶ 3,4 and 49 of the Indictment, contained and constituted trade secrets; and

6.      All reports or examinations relating to any expert testimony the government anticipates introducing at trial.

We request that the government provide this material as soon as possible, or in any event no later than May 31, 2019, as set forth in the Case Scheduling Order.

**IX.          Other Crimes Evidence**

Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b) of the Federal Rules of Evidence, Huawei requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Huawei (or any person alleged to have been acting pursuant to their instructions), upon which the government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  We request that the government provide this disclosure as soon as possible, or in any event no later than November 4, 2019, as set forth in the Case Scheduling Order.

**X.          Suppression Issues**

1.      As a predicate to potential motions pursuant to Fed. R. Crim. P. 12, Huawei requests that it be informed:

a.      Whether the government intends to offer into evidence any statement made by Huawei or any Rule 16(a)(1)(C) person, and the substance of any such statement;

b.      Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 15



c.   Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;

d.   Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

e.   In connection with any tape recording, wiretaps, or other surveillance of the defendant during the investigation of the allegations of the indictment or any related allegations, Huawei seeks:

   i.    The names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge;

   ii.   Transcripts or other records of the statements or conversations monitored;

   iii.  The original recorded tapes created during such surveillance;

   iv.   The procedures used to conduct such surveillance; and

   v.    The authority under which such surveillance was conducted.

f.   Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence; and

g.   The identities of any informant or undercover agent employed by the government during its investigation of the charges of the indictment.

2.   Huawei requests that the prosecution disclose whether it intends to offer in its case-in-chief, as a statement by Huawei, any of the following, and that it provide the substance of any such statement:

a.   Any statement as to which Huawei allegedly manifested its adoption or belief in its truth. *See* Fed. R. Evid. 801(d)(2)(B).

b.   Any statement made by another which was purportedly authorized by Huawei. *See* Fed. R. Evid. 801(d)(2)(C).

15



    c.     Any statement made by an agent or servant of Huawei concerning a matter within the scope of his agency or employment made during the existence of such a relationship.  *See* Fed. R. Evid. 801(d)(2)(D).

    d.     Any statement made by an alleged co-conspirator of Huawei during the course and in furtherance of any alleged conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).

## XI.    Charts and Summaries

Pursuant to Fed. R. Evid. 1006, Huawei requests that it be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

## XII.    Electronically Stored Information

Huawei requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  To that end, Huawei requests a "meet and confer" meeting prior to the production of any discovery to discuss the nature, volume, and mechanics of the government's production of ESI discovery.  Among other things, Huawei makes the following requests:

1.    The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files searchable, the government should produce such enhanced ESI in discovery to save Huawei the time and expense of replicating this work.  Huawei does not seek any government work product by this request.

2.    The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Huawei's review of discovery, and avoid discovery disputes, unnecessary expense, and undue delay.  Further, the government should produce the cover letters that accompanied and described the third party productions of ESI and other documents to facilitate Huawei's review.

3.    For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, or personal digital assistant), the



AUSA Todd Greenberg
AUSA Thomas M. Woods
March 15, 2019
Page 17

government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched or from where it was produced.

4.     The government should produce any materials received in paper form in a converted digital format as electronic files that can be viewed and searched. These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages.  Alternatively, a less preferable option would be production in multi-page, searchable PDF format. Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

5.     All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply.  We are available to discuss any of the foregoing requests at your convenience.  We reserve the right to supplement these requests as we review the discovery material and prepare for trial.

Sincerely,

James F. Hibey
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000

Robert Westinghouse
Yarmuth Wilsdon PLLC
1420 Fifth Avenue, Suite 1400
Seattle, WA  98101
(206) 516-3835

*Counsel for Defendants Huawei Device Co., Ltd., and Huawei Device USA, Inc.*

17

# Exhibit B to Defendants' Motion to Dismiss the Indictment For Selective Prosecution, Or in the Alternative, For Discovery

# Cases

## District Court Cases

Showing **20** Lex Machina cases; with Claimant Win: Trial as a case resolution; with No Willfulness / Malicious Behavior as a Trade Secret Finding; pending between 2009-01-01 and 2019-07-27; sorted by most recent docket activity.

### Summary

**Case Filings** (Top 6 by Focus Order)



| | <2013 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019* |
|---|---|---|---|---|---|---|---|---|
| Copyright | 3 | 0 | 0 | 0 | 1 | 0 | 0 | 0 |
| Patent | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Trade Secret | 12 | 3 | 1 | 2 | 2 | 0 | 0 | 0 |
| Trademark | 2 | 2 | 0 | 0 | 1 | 0 | 0 | 0 |
| Antitrust | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bankruptcy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

*\* 2019 numbers are year-to-date. Open dots are full-year estimates.*

### Cases by Type

| Case Types | Cases | |
|---|---|---|
| Copyright | 4 | |
| Patent | 1 | |
| Trade Secret | 20 | |
| Trademark | 5 | |
| Contracts | 19 | |

*All other Case Types have 0 results in this case list.*

### Case Status

Open: 0 (0%)                    Terminated: 20 (100%)

### Courts

| | | |
|---|---|---|
| N.D.Cal. | 4 | 20% |
| C.D.Cal. | 2 | 10% |
| W.D.Ok... | 2 | 10% |
| M.D.Pa. | 2 | 10% |
| N.D.Ala. | 1 | 5% |
| Other C... | 9 | 45% |

### District Judges

| | | |
|---|---|---|
| Stephen ... | 2 | 10% |
| Peter C. ... | 1 | 5% |
| John Gilp... | 1 | 5% |
| Thomas J... | 1 | 5% |
| Vicki Mil... | 1 | 5% |
| 14 Other... | | |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 43

## Timing



| Event | Cases Reaching Event | Median Days from Case Filing to Event |
|---|---|---|
| Temporary Restraining Order (Grant) | 1 | n/a |
| Temporary Restraining Order (Deny) | 2 | n/a |
| Preliminary Injunction (Grant) | 3 | n/a |
| Preliminary Injunction (Deny) | 2 | n/a |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-


| Event | Cases Reaching Event | Median Days from Case Filing to Event |
|-------|---------------------|---------------------------------------|
| **Permanent Injunction (Deny)** | 1 | n/a |
| **Claim Construction Hearing** | 1 | n/a |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 45


## Parties

| Top Plaintiffs | Top Defendants |
| --- | --- |
| T-Mobile USA, Inc. | Mattel, Inc. |
| GSI Technology, Inc. | Integrated Silicon Solution, Inc. |
| Textron Innovations Inc. | Software AG |
| Brocade Communications Systems, Inc. | Huawei Technologies Co., Ltd. |
| Allied Gator, Inc. | Scottsdale Insurance Company |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 46

Lex Machina

## Case Resolutions



| Claimant Win | 20 | 100% |
|---|---|---|
| Default Judgment | 0 | 0% |
| Consent Judgment | 0 | 0% |
| Judgment on the Pleadings | 0 | 0% |
| Summary Judgment | 0 | 0% |
| Trial | 20 | 100% |
| Judgment as a Matter of Law | 0 | 0% |
| Decision on Bankruptcy Appeal | 0 | 0% |
| **Claim Defendant Win** | **0** | **0%** |
| Default Judgment | 0 | 0% |
| Consent Judgment | 0 | 0% |
| Judgment on the Pleadings | 0 | 0% |
| Summary Judgment | 0 | 0% |
| Trial | 0 | 0% |
| Judgment as a Matter of Law | 0 | 0% |
| Decision on Bankruptcy Appeal | 0 | 0% |

| Likely Settlement | 0 | 0% |
|---|---|---|
| Plaintiff Voluntary Dismissal | 0 | 0% |
| Stipulated Dismissal | 0 | 0% |
| **Procedural Resolution** | **0** | **0%** |
| Contested Dismissal | 0 | 0% |
| Dismissal | 0 | 0% |
| Consolidation | 0 | 0% |
| Severance | 0 | 0% |
| Interdistrict Transfer | 0 | 0% |
| Intradistrict Transfer | 0 | 0% |
| Stay | 0 | 0% |
| Multidistrict Litigation | 0 | 0% |
| **No Case Resolution** | **0** | **0%** |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 47

**Lex Machina**

## Damages



| DAMAGE TYPE | CASES | AMOUNT |
|---|---|---|
| ▾ **Copyright Damages** | **1** | **$60,000,000** |
| Actual Damages / Infringer's Profits | 1 | $60,000,000 |
| ▾ **Patent Damages** | **1** | **$51,373,820** |
| Reasonable Royalty | 1 | $1,975,916 |
| Lost Profits | 1 | $49,397,904 |
| ▾ **Trade Secret Damages** | **11** | **$192,969,228** |
| Actual Damages / Lost Profits | 11 | $106,319,228 |
| Punitive / Willfulness Damages | 3 | $86,650,000 |
| ▾ **Contracts Damages** | **11** | **$10,512,052** |
| Contract Damages | 6 | $3,679,336 |
| Restitution | 2 | $5,400,000 |
| Tort Compensatory Damages | 4 | $902,277 |
| Punitive Damages | 1 | $251,500 |
| Enhanced Damages | 1 | $278,939 |
| ▾ **General Damages** | **10** | **$127,337,957** |
| Other / Mixed Damage Types | 3 | $124,350,000 |
| Attorneys' Fees / Costs | 9 | $2,987,957 |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

**Grand Total: $442,193,057**

*Practice Areas with no damage awards are not shown.*

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 49

**M1 Lex Machina**

## Trade Secret Findings

### Trade Secret Findings by Judgment Event

| Findings | Default Judgment | Consent Judgment | Judgment on the Pleadings | Summary Judgment | Judgment as a Matter of Law | Trial | Any Judgment Event |
|---|---|---|---|---|---|---|---|
| Ownership / Validity | 0 | 0 | 1 | 0 | 10 | 0 | 11 |
| Failure to Identify Trade Secret | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Failure to Maintain Secrecy | 0 | 0 | 0 | 0 | 1 | 1 | 2 |
| Generally Known / Readily Ascertainable | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| No Ownership / Validity: Wrong Entity | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DTSA Trade Secret Misappropriation | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| No DTSA Trade Secret Misappropriation | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| State Law Trade Secret Misappropriation | 1 | 1 | 0 | 1 | 19 | 0 | 19 |
| No State Law Trade Secret Misappropriation | 0 | 0 | 0 | 0 | 6 | 0 | 6 |
| Willfulness / Malicious Behavior | 0 | 0 | 0 | 0 | 7 | 0 | 7 |
| No Willfulness / Malicious Behavior | 0 | 0 | 0 | 0 | 19 | 1 | 20 |
| Independent Development Defense | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| No Independent Development Defense | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Equitable or Time-Barred Defense | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| No Equitable or Time-Barred Defense | 0 | 1 | 1 | 0 | 2 | 0 | 3 |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-

## Case List

| Title | Civil Action # | Case Type | Court | Filed On | Last Docket | Terminated |
|---|---|---|---|---|---|---|
| Babcock Power Inc. et al v. Kapsalis | 3:13-cv-00717 | Trademark Trade Secret Contracts | W.D.Ky. | 2013-07-17 | 2019-07-24 | 2019-01-15 |
| Manufacturing Automation and Software Systems, Inc. v. Kristopher Hughes et al | 2:16-cv-08962 | Trademark Copyright Trade Secret Contracts | C.D.Cal. | 2016-12-02 | 2019-07-23 | 2019-02-14 |
| Gaedeke Holdings VII LTD et al v. Thrower et al | 5:11-cv-00649 | Trademark Trade Secret Contracts | W.D.Okla. | 2011-06-08 | 2019-07-18 | 2015-12-11 |
| Enertrode, Inc. v. General Capacitor Co. Ltd et al | 4:16-cv-02458 | Trade Secret Contracts | N.D.Cal. | 2016-05-05 | 2019-04-17 | 2019-01-30 |
| Advanced Fluid Systems, Inc. v. Huber et al | 1:13-cv-03087 | Trademark Trade Secret | M.D.Pa. | 2013-12-24 | 2019-04-09 | 2018-03-06 |
| Spindler et al v. Virginia Electric and Power Company et al | 5:15-cv-00779 | Trade Secret Contracts | N.D.N.Y. | 2015-06-25 | 2018-10-04 | 2018-03-20 |
| Quantlab Technologies Ltd. (BVI) et al v. Godlevsky et al | 4:09-cv-04039 | Copyright Trade Secret Contracts | S.D.Tex. | 2009-12-18 | 2018-10-03 | 2015-09-17 |
| T-Mobile USA Inc v. Huawei Device USA Inc et al | 2:14-cv-01351 | Trade Secret Contracts | W.D.Wash. | 2014-09-02 | 2018-01-02 | 2017-05-22 |
| GSI Technology, Inc. v. United Memories, Inc. | 5:13-cv-01081 | Trade Secret Contracts | N.D.Cal. | 2013-03-08 | 2017-12-29 | 2015-11-25 |

https://law.lexmachina.com/cases/?pending-from=2009-01-01&pending-to=&resolution-include=CW_T&trade_secret_finding-include=NWMB&filters=true&tab=summary&view=analytics&cols=475

| Title | Civil Action # | Case Type | Court | Filed On | Last Docket | Terminated |
|---|---|---|---|---|---|---|
| GlobeRanger Corporation v. Software AG et al | 3:11-cv-00403 | Trade Secret Contracts | N.D.Tex. | 2011-03-01 | 2017-01-23 | 2015-02-06 |
| Union Pump Co v. Centrifugal Technology Inc et al | 5:05-cv-00287 | Trade Secret Contracts | W.D.La. | 2005-02-14 | 2015-07-27 | 2009-09-30 |
| Brocade Communications Systems, Inc. et al v. A10 Networks, Inc. et al | 5:10-cv-03428 | Patent Copyright Trade Secret Contracts | N.D.Cal. | 2010-08-04 | 2015-06-03 | 2013-07-18 |
| CPG International, LLC v. Georgelis | 3:15-cv-00176 | Trade Secret Contracts | M.D.Pa. | 2015-01-26 | 2015-04-21 | 2015-04-20 |
| Carter Bryant v. Mattel Inc | 2:04-cv-09049 | Copyright Trade Secret Contracts | C.D.Cal. | 2004-11-02 | 2014-12-15 | 2011-08-04 |
| Daugherty v. Atlanta Crane & Automated Handling, Inc | 2:10-cv-01371 | Trade Secret Contracts | N.D.Ala. | 2010-05-28 | 2014-10-15 | 2012-09-14 |
| ATS Products, Inc. v. Ghiorso et al | 3:10-cv-04880 | Trade Secret Contracts | N.D.Cal. | 2010-10-28 | 2013-08-20 | 2012-01-27 |
| Allied Erecting & Dismantling Co., Inc. et al v. Genesis Equipment & Manufacturing, Inc. et al | 4:06-cv-00114 | Trademark Trade Secret Contracts | N.D.Ohio | 2006-01-17 | 2013-07-17 | 2010-07-07 |
| Drummond American LLC v. Share Corporation et al | 5:08-cv-01004 | Trade Secret Contracts | W.D.Okla. | 2008-09-22 | 2013-04-18 | 2009-09-03 |
| Marlite, Inc. v. America Canas | 1:09-cv-22607 | Trade Secret Contracts | S.D.Fla. | 2009-09-01 | 2013-02-15 | 2010-07-12 |
| NCMIC Finance Corporation v. Artino et al | 4:07-cv-00204 | Trade Secret | S.D.Iowa | 2007-05-10 | 2011-11-14 | 2009-07-29 |

**Lex Machina**

| Title | Civil Action # | Case Type | Court | Filed On | Last Docket | Terminated |
|---|---|---|---|---|---|---|

Contracts

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 53

# Exhibit C to Defendants' Motion to Dismiss the Indictment For Selective Prosecution, Or in the Alternative, For Discovery

FD-1057 (Rev. 5-8-10)



# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** ▉▉▉ Interview of T-MOBILE                    **Date:** 08/22/2013

**From:** SEATTLE
        SE-▉
        **Contact:** Clements James D, ▉▉▉▉▉▉

**Approved By:** Maeng J Sung

**Drafted By:** Clements James D

**Case ID #:** ▉▉▉-SE-96236      

**Synopsis:** ▉▉▉ Summary of August 20, 2013 Interview of T-MOBILE re
HUAWEI Security Incidents



**Full Investigation Initiated:** ▉▉▉▉

**Enclosure(s):** Enclosed are the following items:
1.  (U) Original Notes re Interview

**Details:**

        ▉▉▉ On August 20, 2013, the interviewing agents met with the
following representatives of **T-MOBILE USA, INC. ("T-MOBILE")**, business
address 12920 SE 38th Street, Bellevue, Washington: **Georgianne RILEY**,
Vice President Legal Affairs and Compliance, business telephone
425-383-5263, email georgianne.riley@t-mobile.com; **Corban CUNNINGHAM**,
Investigator, Corporate Investigations, business telephone
610-317-4556, mobile telephone 610-504-1148, email
corban.cunningham@t-mobile.com; **Dean BLACK**, Senior Investigator,





Title: ████████ Interview of T-MOBILE
Re: ████SE-96236, 08/22/2013

Corporate Investigations, business telephone 425-383-5348, PCS
425-444-1659, email dean.black@t-mobile.com.  The T-MOBILE
representatives voluntarily provided the following information:

████████ In May 2013, T-MOBILE experienced two incidents in which
employees of **HUAWEI** obtained proprietary information on T-MOBILE's
handset-testing equipment without authorization.  On May 14, 2013, **Yu
"Frank" WANG**, a HUAWEI employee from the **PEOPLE'S REPUBLIC OF CHINA
(PRC)**, improperly accessed T-MOBILE's restricted testing chamber and
took several photographs of its test robot before being caught and
directed to leave by a T-MOBILE employee.  About two weeks later, on
May 29, 2013, **Xinfu "Adam" XIONG**, an engineer from HUAWEI's Bellevue,
Washington, office, removed from the test robot the end effector, a
proprietary device attached to the robot that simulates the human
finger, and carried it out of T-MOBILE's facility, returning it
sometime later.  After conducting its own internal investigation,
T-MOBILE contacted the FBI to report the incidents.

████████ T-MOBILE brands and sells handsets manufactured by multiple
original equipment manufacturers (OEMs), including HUAWEI and **ZTE**.  All
such handsets are tested by T-MOBILE according to a standardized
protocol to ensure that they satisfy T-MOBILE's specifications before
being marketed.  The testing is performed inside a testing chamber at
T-MOBILE's headquarters facility in Bellevue, Washington.

████████ T-MOBILE's testing chamber is comprised of a testing robot
and a laptop-computer system that controls the robot.  Although the
robot is an off-the-shelf product manufactured by **EPSON**, used with the
robot is a proprietary end effector developed internally by T-MOBILE.
The end effector, which attaches to the base of the robot and includes
a conductive rubber tip, is designed to replicate the conductivity and
other characteristics of the human finger.  To test a handset, the
laptop runs a sequence code that directs the end effector to press
various buttons on the handset in a particular order.  Access to the



2

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 56

CR19_00066384

Title: ▮▮▮▮▮ Interview of T-MOBILE
Re: ▮▮▮▮SE-96236, 08/22/2013

testing chamber is restricted to a limited number of personnel, including at list some OEM engineers who perform the testing on their company's handsets.

T-MOBILE considers its end-effector design to be valuable intellectual property.  The company has invested significant resources in the research and development of the end effector and has obtained patents in both the United States and the PRC covering the technology. In fact, T-MOBILE has even received interest in the technology from another OEM, **HTC**.  T-MOBILE estimates that the technology is worth millions of dollars.

On May 14, 2013, a T-MOBILE employee discovered WANG, a HUAWEI employee from the PRC, in the testing chamber taking photographs of the testing robot.  WANG's access to the testing chamber was unauthorized; he was allowed into the chamber by XIONG, a HUAWEI engineer from the company's Bellevue office, who was authorized access for the purpose of testing HUAWEI's handsets.  T-MOBILE later learned that WANG had attempted to access the testing chamber the day before, May 13, 2013, but was unsuccessful.

T-MOBILE was aware neither that WANG would be visiting its offices nor of the ostensible purpose of his visit.  About one hour after WANG had entered the testing chamber, however, T-MOBILE had received an email from the T-MOBILE account representative at HUAWEI, **R ichard YAO**, requesting that WANG be granted access to the testing chamber.  T-MOBILE had not responded to YAO's request before learning of WANG's unauthorized entry.

The unauthorized entry of WANG into the testing chamber and his photographing inside the chamber was a violation of HUAWEI's contractual agreement with T-MOBILE.  Accordingly, for approximately one week following the incident, T-MOBILE prohibited any HUAWEI employee from entering the testing chamber.

About one week after relaxing this prohibition, on May 29, 2013, a second security incident involving HUAWEI occurred.  Security

3

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 57

CR19_00066385



Title: █████████   Interview of T-MOBILE
Re: █████-SE-96236, 08/22/2013

video from that date showed XIONG, the HUAWEI engineer who had given
WANG access to the testing chamber, entering the testing chamber and
removing the end effector from the test robot.  Sometime later, XIONG
returned it.  XIONG would later explain that he had taken the end
effector to HUAWEI's Bellevue office, where he took photographs and
measurements of the device and sent the information to HUAWEI's offices
in the PRC.

███████  Through its subsequent investigation, T-MOBILE discovered
that XIONG had also obtained screenshots from the laptop computer in
the testing chamber.  A forensic examination of the laptop revealed
that XIONG had opened both Paint and his personal email account.  When
confronted, XIONG stated that he had sent himself screenshots of the
test results, which T-MOBILE acknowledged HUAWEI was permitted to
have.  But T-MOBILE provides these results to the OEMs itself and, in
any event, transfer of proprietary T-MOBILE data over personal email is
prohibited under corporate policy.  T-MOBILE was unable through its
examination to determine what was being displayed on the laptop screen
when the screenshots were taken, so the veracity of XIONG's explanation
remains uncertain.

███████  A few days after the second incident, on June 3, 2013,
T-MOBILE contacted **Michael CHANG**, the President of Sales for HUAWEI, to
discuss both incidents.  CHANG informed T-MOBILE, who requested an
in-person interview with WANG, that WANG had already returned to the
PRC.  But when T-MOBILE conducted a phone interview of WANG several
days later, on June 9, 2013, WANG stated that he had returned to the
PRC sometime after June 3, 2013 (the date that T-MOBILE contacted
CHANG).  Three days later, on June 12, 2013, T-MOBILE conducted an
in-person interview of XIONG.

███████  During their interviews, both WANG and XIONG admitted to
what they had done, at least in general terms.  But both disavowed
receiving any direction from HUAWEI, instead asserting that they had
acted on their own.  According to correspondence recently received by
T-MOBILE from **Jennifer PONDER**, Human Resources Manager for HUAWEI USA,



4

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 58

CR19_00066386



Title: ████████ Interview of T-MOBILE
Re: ████ SE-96236, 08/22/2013

both WANG and XIONG have since been terminated, and their supervisors have been disciplined.

████ Meanwhile, during the course of its discussions with HUAWEI, T-MOBILE learned that HUAWEI had been endeavoring to develop its own end effector. HUAWEI had not previously disclosed this fact to T-MOBILE, who would have otherwise offered to assist HUAWEI in its efforts.

████ T-MOBILE felt compelled to notify the FBI of the incident pursuant to its agreement with the FBI, the U.S. Department of Justice (DOJ), and the U.S. Department of Homeland Security (DHS). Because T-Mobile purchases handsets from HUAWEI and ZTE, T-MOBILE was recently required to sign an amendment to its agreement with the FBI *et al.* that it did not and would not use any HUAWEI or ZTE components in its core network. The amendment was a consequence of the report on HUAWEI and ZTE released by the U.S. House of Representatives last fall. RILEY asked the interviewing agents if T-MOBILE could also share information regarding the incidents to Richard Hager at DHS. The interviewing agents agreed, requesting only that T-MOBILE notify the FBI if any local DHS personnel are assigned to investigate the matter.

◆◆



5

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION
U.S. v. Huawei Device Co., Ltd., et al.,
No. 19-CR-010 - Page 59

CR19_00066387